

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-5-2007

# Xiu v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4971

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Xiu v. Atty Gen USA" (2007). *2007 Decisions.* Paper 1348.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1348

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 05-4971
_____

FENG MEI XIU,
a/k/a Feng Mei XU,
                                        Petitioner

v.

ATTORNEY GENERAL USA,
                                        Respondent

_____

On Petition for Review of a Decision of
the Board of Immigration Appeals
Immigration Judge R.K. Malloy
(Agency No. A79 447 466)

_____

Submitted Under Third Circuit LAR 34.1(a)
November 17, 2006

BEFORE: BARRY, CHAGARES and ROTH, <u>CIRCUIT JUDGES</u>

(Filed :  April 5, 2007)

_____

OPINION
_____

PER CURIAM

        Feng Mei Xiu, a native and citizen of China, petitions for review of a final order of

removal.  We will affirm the order of the Board of Immigration Appeals ("BIA").

Feng Mei Xiu is twenty-four years old. She came to the United States in 2002 without a valid entry document. The Immigration Judge ("IJ") found Xiu removable on this basis. Xiu applied for asylum, withholding of removal, and relief under the Convention Against Torture, claiming that she fears persecution on account of an imputed political opinion.

In support of her applications for relief from removal, Xiu testified that she opened a book stand in China in December 2001 while living with her brother's girlfriend. She asked her uncle to help her operate the stand. Xiu's uncle asked Xiu to sell Falun Gong materials, and she agreed. Her uncle had been arrested in 1999 because he practiced Falun Gong. Xiu knew that selling these materials was illegal, but she did so because she opposed the Chinese government's policies.

In March 2002, Xiu went home to get Falun Gong materials for a customer. While at home, her uncle called and told her that the police were at the book stand, and that she should run away. Xiu went into hiding. Her mother told her that the police arrested her uncle, searched her room, and found Falun Gong materials. The police took away her brother's girlfriend for a brief period of time. Xiu's mother later told her that the police were looking for her, and that she should report to the police station. Xiu remained in hiding because she was afraid she would be taken to prison and mistreated. Xiu's uncle had told her that he was mistreated when he was imprisoned.

In April 2002, Xiu's parents and a friend helped her leave China. Her mother later told her that the police went to her home and damaged the furniture, and that officials

2

released her uncle in June 2002. He was weak and unable to work. Xiu believes that the police will arrest her if she returns to China.

The IJ did not find Xiu credible. Xiu did not mention her uncle during her airport interview or credible fear interview. The IJ found this omission "baffling" given that Xiu's problems stemmed from her uncle, and he was arrested and mistreated for practicing Falun Gong. The IJ also noted that Xiu testified that she knew selling Falun Gong material was illegal, but she told immigration officials that she did not know selling such material was illegal.

The IJ also stated that Xiu could have had her cousin, who was a lawful permanent resident and aware of her uncle's arrest, corroborate her story. The IJ stated that, other than Xiu's testimony, there was no evidence establishing that Xiu operated a book stand or had an uncle. Based upon the lack of evidence, vague testimony, and inconsistencies, the IJ concluded that Xiu failed to establish past persecution, or that she would suffer future persecution or be tortured if she returned to China.

The Board of Immigration Appeals affirmed, without opinion, the results of the IJ's decision, making it the final agency determination. Xiu filed a pro se petition for review. We have jurisdiction to review final orders of removal under 8 U.S.C. § 1252(a)(1). We review adverse credibility determinations for substantial evidence. Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004). Under this deferential standard of review, we must uphold the credibility determination unless any reasonable adjudicator would be compelled to conclude to the contrary. Id.

3

Xiu argues that the IJ's adverse credibility finding is not supported by substantial evidence. She contends that her failure to mention her uncle to immigration officials was not a material omission because her asylum claim is based upon her sale of Falun Gong materials, not her association with her uncle. Xiu argues that the IJ mischaracterized her asylum claim in stating that it was based on her association with Falun Gong members.

The administrative record reflects that, at her credible fear interview, Xiu stated that Chinese officials wanted to arrest her because she sold Falun Gong books. When asked why she sold such books, she stated that she did so in order to make a living, and because she thought it was "o.k." A.R. at 226. Xiu testified, however, that she sold Falun Gong materials at her uncle's request, and that she knew it was illegal to do so.

In addition, when asked at the airport to identify her occupation, Xiu stated that she distributed pamphlets for Falun Gong. She also stated that she left China because "the government was arresting people who belong in the Falungong[sic]." A.R. at 233. Xiu did not mention that she operated a book stand, that her uncle was arrested, or that the police were looking for her because she sold Falun Gong materials. Xiu testified that she did not practice Falun Gong.

These inconsistencies and omissions go to the heart of Xiu's asylum claim, whether characterized as based upon her sale of Falun Gong materials or her association with Falun Gong members. Contrary to Xiu's argument, these discrepancies are material to determining her credibility. See Chen, 376 F.3d at 224 (stating that discrepancy between airport interview, where alien stated that he left China because he was unable to

4

practice Falun Gong, and testimony, where alien stated that he was not a Falun Gong follower, but sold Falun Gong books, supported adverse credibility finding).[1]

Xiu also argues that the airport interview and credible fear interview are insufficient to support an adverse credibility finding where there is no information about the manner in which the interviews were conducted. The Court has counseled against placing too much weight on an airport interview, especially when the IJ and BIA lack information as to the manner in which the interview was conducted. Id. at 223-24. However, where an alien does not challenge the manner in which an airport interview was conducted, discrepancies between the interview and testimony that go to the heart of the alien's claim support an adverse credibility determination. See id. at 224.

Xiu does not challenge the manner in which her airport interview was conducted. Although she states that she may not have understood the questions posed to her, and that she may have feared immigration officials, she does not assert that she in fact did not understand the questions or feared officials. In addition, Xiu made inconsistent statements not only at the airport, but later at her credible fear interview. Because the discrepancies between Xiu's interviews and her testimony go to the heart of her claim, the IJ did not err in relying on them.

_____

[1] We agree with Xiu that the IJ's adverse credibility finding is not supported by an inconsistency between Xiu's affidavit, in which she stated that officials destroyed her home furniture, and her testimony that she lived with her brother's girlfriend. At most, the record is ambiguous as to where officials destroyed her furniture. It appears that officials did so at her mother's home.

In light of these discrepancies, we cannot conclude that the IJ was compelled to find Xiu credible. Substantial evidence supports the adverse credibility determination. Accordingly, we will deny the petition for review.[2]

---

[2] Because we conclude that the adverse credibility finding is supported by substantial evidence, we need not address Xiu's additional arguments that the IJ erred in requiring her to provide evidence corroborating her testimony, and that she satisfied her burden of proof.